Frank W. Volk, Chief Judge
United States Bankruptcy Court
Southern District of West Virginia

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### AT CHARLESTON

| | |
|---|---|
| IN RE:<br><br>BOBBY KEITH ADKINS,<br><br>       Debtor. | CASE NO. 2:14-bk-20211<br><br>CHAPTER 7<br><br>JUDGE FRANK W. VOLK |
| QUALITY CAR AND TRUCK LEASING, INC.,<br><br>       Plaintiff,<br>v.<br><br>BOBBY KEITH ADKINS,<br><br><br>       Defendant. | ADVERSARY PROCEEDING NO. 2:14-ap-2082 |

## **MEMORANDUM OPINION AND ORDER**

    This matter is before the Court on Quality Car and Truck Leasing, Inc.'s Motion for Partial Summary Judgment Under Section 523 of the Bankruptcy Code (doc. 73), filed on September 15, 2016, and Quality Car and Truck Leasing, Inc.'s Motion for Partial Summary Judgment Under Section 727 of the Bankruptcy Code (doc. 71).

    After receiving no response from the Defendant, Bobby Keith Adkins, a *Roseboro* Notice issued allowing Mr. Adkins until October 28, 2016, to respond. He did so on October 31, 2016 (doc. 78), and Quality Car and Truck Leasing, Inc. ("Quality Car") replied on November 7, 2016 (doc. 82). The matter is thus ripe for adjudication.

    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

**I.**

A. **Facts and Procedural History**

Bobby Keith Adkins filed his Chapter 7 Petition on April 23, 2014. In July of that year, Quality Car filed the above-captioned adversary proceeding. In the main case, the Chapter 7 Trustee filed a Report of Assets and Request to Issue Claims Notice on August 28, 2014 (doc. 59). However, that Report was withdrawn on December 20, 2016, and a Report of No Distribution was issued on the same day (doc. 94). Quality Car has objected to that withdrawal and a hearing is scheduled for February 2, 2017. No discharge has been entered for Mr. Adkins.

This adversary proceeding was commenced with the filing of a Complaint by Quality Car under sections 523 and 727 of the Bankruptcy Code. Mr. Adkins filed an Answer on August 20, 2014. Quality Car filed a Motion for Default Judgment in May of 2015, to which Mr. Adkins responded and Quality Car replied. After a hearing in September of 2015, the Motion for Default Judgment was denied, but the Court ordered Mr. Adkins to fully cooperate with the Chapter 7 Trustee in identifying and liquidating assets, and to provide his tax returns, his complete file regarding application for disability benefits, and all information regarding his employment since filing. A.P. Dckt. 38.

Soon thereafter, Mr. Adkins' counsel withdrew from his representation, and Mr. Adkins proceeded *pro se* as of December 30, 2015. Following some discovery, Quality Car filed the instant Motion for Partial Summary Judgment.

Mr. Adkins lives on a farm in Jackson County, West Virginia, and sometimes conducts business as himself, or as either "Adkins Farm" or "Adkins Farms Rental Equipment."

Mr. Adkins has a son, Jacob Adkins, who lives or has lived with him on the farm and worked with Mr. Adkins in the farm businesses.

Prior to 2009, Mr. Adkins purchased several items of farm equipment which were financed by Quality Car, pursuant to purchase money security interests. This equipment was to be used solely in his farm equipment rental business. Mr. Adkins defaulted under these security agreements during or before 2009. Quality Car agreed to refinance the agreements, conditioned upon Jacob Adkins acquiescing to become a joint obligor and co-maker. Under these refinanced agreements, under which Mr. Adkins and Jacob Adkins were joint obligors, Quality Car was granted liens and security interests in 87 pieces or categories of equipment/vehicles. Provided to Quality Car were VINs, bills of sale, serial numbers, purchase prices, and other documentation. Quality Car properly perfected the liens by making UCC filings and was in first position on all of them.

Eventually, Mr. Adkins and Jacob Adkins defaulted on these refinanced agreements. Quality Car made numerous attempts to locate and repossess the collateral, but the Adkins' refused to comply and allegedly "concealed and secreted" the equipment. Quality Car resorted to calling equipment dealers and auctioneers in an attempt to locate the equipment. Several transactions were uncovered.

### 1. Joe R. Pyle Auctioneer Service Transaction

Mr. Adkins sold several pieces of equipment in October of 2009 through the Joe R. Pyle Auction Service in Mount Morris, Pennsylvania. Quality Car learned of the sale in December of 2009. Following the auction, Mr. Adkins engaged in a financing scheme wherein he used $17,000 of the sale proceeds from the auction to purchase a vehicle, which was titled in Jacob Adkins' name, and which was then used as collateral to obtain a $17,000 loan from Traders Bank

in Ripley, West Virginia. Only the Traders Bank lien was listed on the title. The vehicle was sold to bona fide purchasers in the spring of 2010, who took it free and clear of any attachment lien by Quality Car. Quality Car has since received $7,000 in proceeds from this sale, but $10,000 was ultimately diverted.

### 2. Quarrick Equipment & Auction, Inc. Sale(s)

In the spring of 2009, Mr. Adkins took several unidentified pieces of equipment to Quarrick Equipment & Auction, Inc., in Uniontown, Pennsylvania. Following an auction on April 2, 2009, Mr. Adkins was issued a check (no. 6119) in the amount of $10,523.50. That check was deposited on April 20, 2009, into Jacob Adkins' account at City National Bank, at which time funds were also withdrawn.

A separate auction transaction may have taken place in 2009 or 2010, pursuant to a letter from David K. Moore, Mr. Adkins' attorney, to Quality Car. The letter indicated several pieces of equipment that were sold at auction but did not list a place or time. The total amount of the sales was $16,600. The proceeds of this sale were transmitted from Mr. Moore to Quality Car via a check drawn on Mr. Moore's trust account.

Quality Car was not aware of either of these auction transactions prior to their occurrence, nor did Quality Car provide Mr. Adkins with permission to auction this collateral.

### 3. Greg May Sale

Mr. Adkins, at an unknown time, sold to Greg May two pieces of equipment for a combined $13,000. This information was relayed to Quality Car by Mr. Moore, who sent the proceeds of the sale to Quality Car via cashier's check.

4

Quality Car was unaware of this transaction prior to its occurrence, nor did Quality Car provide Mr. Adkins with permission to sell this collateral.

### 4. Miscellaneous Sale

Mr. Adkins, at some unknown time, sold two pieces of equipment to an unidentified person for a total of $2,150. This information was relayed to Quality Car by Mr. Moore, who transmitted proceeds from the sale to Quality Car via a check drawn on Mr. Moore's trust account. Quality Car was unaware of this unauthorized transaction prior to its occurrence.

Following Mr. Adkins's default on the refinanced agreements, and Quality Car's futile attempts to locate and repossess its collateral, Quality Car instituted an action in Jackson County, West Virginia. The action was titled Quality Car & Truck Leasing, Inc. v. Keith Adkins and Jacob Adkins, Civil Action No. 09-C-130. Quality Car sought both immediate possession of the equipment it could not locate, along with damages. Quality Car repossessed and sold at foreclosure all of the collateral it could locate. Mtn. Sum. Jdgmt. p. 5. In December of 2010, the Circuit Court eventually compelled discovery responses from Mr. Adkins and Jacob Adkins, and after the two failed to submit sufficient responses, the Circuit Court found that "the defendants had 'failed in their duties to respond to the discovery requests.'" Complaint, p. 7, no. 40. In January of 2011, the Circuit Court concluded that the Adkins violated the December 2010 court order, and the violation was "willful and contumacious." *Id.*, pp. 7-8, no. 41. Mr. Adkins was penalized with a per diem fine of $100 for every day he did not provide answers to Quality Car's discovery requests. *Id.*

During these proceedings, Mr. Adkins threatened Quality Car with destruction and/or permanent concealment of the collateral. Around the time of the January 2011 hearing, Mr.

Adkins made some of the missing collateral available to Quality Car, but not all of it. As of today, no discovery requests have ever been filed in the Jackson County action.

Eventually, the Jackson County Circuit Court entered judgment in favor of Quality Car in the amount of $281,459.83, plus interest of at least $83,523.47. This was a deficiency judgment entered pursuant to Quality Car's motion for summary judgment.

To date, Quality Car has been unable to locate at least thirty-two (32) pieces of collateral (which are listed more specifically in the Complaint and Exhibit A). Quality Car alleges in its Motion for Summary Judgment that Mr. Adkins has damaged Quality Car's interest in collateral in the amount of $90,743. That amount is the value of the missing collateral plus the $10,000 that was diverted from Quality Car following the Pyle Auction.

Mr. Adkins has varying responses to Quality Car's allegations. He asserts that he either does not remember the collateral, the location of the collateral, or purchasing or possessing the collateral. He has also claimed that the collateral was stolen or incinerated or that Quality Car already has the collateral in its possession. Mtn. Sum. Jdgmt. p. 5 & Exh. 1.

In Mr. Adkins' handwritten Response to the Motion for Summary Judgment, he "object[s] to this judgment." Response, p. 1. He asserts that he is unwell and is unable to "get around to collect some of this evidence." *Id.* Mr. Adkins claims that Quality Car knew of his health conditions prior to issuance of the loan, that "he was filing bankruptcy,"[1] and that the company took him on as a signer because he was "not incorporated and owned property." *Id.* Mr. Adkins further asserts that the loan from Quality Car was a "predatory one" and it was made to "cover up other mistakes."

---

[1] It is unclear from the Response who Mr. Adkins is referring to as "he." It may be Mr. Adkins himself or it may be Mr. Mark Hatfield, who is referred to in the same sentence.

6

Mr. Adkins explains that he was making payments on the loan, but Quality Car began refusing payments made by his son when he was placed on a daily chemotherapy regimen prior to the refinancing of the agreements. *Id.* When Jacob Adkins became a joint obligor on the loan, he was only eighteen years old (18). *Id.*

Mr. Adkins accuses his prior counsel of "only set[ting] [sic] around and listen[ing] to Mr. Vanderford's half truth and lies." *Id.* at 2. He admits that he "owed money to Quality, but it took both them and [him] to cause this mess." *Id.* Mr. Adkins wishes "he could pay them, but [he is] broke and in poor health." *Id.* He asks this Court to grant him "complete bankruptcy" and attaches medical records evidencing his inability to work in the future. *Id.* Importantly, Mr. Adkins does not address or refute any of the specific allegations of conversion or concealment of assets.

In its Reply, Quality Car alleges that, inasmuch as Mr. Adkins states he has "nothing left to sell or take," he must have sold his "rather extensive" collection of livestock and equipment. Reply, p. 2. Quality Car also points out that Mr. Adkins does not refute any of the factual statements made in the Motion for Summary Judgment and in the Complaint. Quality Car refers to Mr. Adkins' "predatory" characterization of the loan at issue as "fantastical and [] typical of Mr. Adkins' obfuscations and reliance upon his infirmities as an excuse for his behavior." *Id.*

With regards to Mr. Adkins' reference to Mark Hatfield in his Response, Quality Car attempts in its Reply to explain. Mr. Hatfield owns All Around the Farm, which sold farm supplies until he ceased operating the rental aspect and sold the rental equipment. Some of that equipment was sold to Mr. Adkins, and Mr. Adkins used loan money from Quality Car for the purchase. Mr. Hatfield did borrow money from Quality Car, but never defaulted on his loan and never filed a bankruptcy petition.

7

Quality Car also notes in its Reply that Mr. Adkins avers quite often that he has cancer.  There is, however, "no [objective] evidence" that he had or has cancer, and the attachment to Mr. Adkins' Response supports that theory.  There is no cancer diagnosis or reference in any of the attached medical records.  Reply, p. 4.  In fact, in one of the documents, a family nurse practitioner notes on August 23, 2016, that Mr. Adkins was in no pain, had no acute distress, appeared well, had a normal heart rate, motor strength, and movement of all extremities, along with a normal gait and stance.  Reply, p. 4; Response pp 6 & 7 of 16.  Quality Car also asserts that Mr. Adkins is able to do some of the work on his farm, including mowing, raking, and riding the tractors, and that he admitted as much in his § 2004 examination.  Reply, p. 5.  Additionally, Jacob Adkins currently operates the farm.  *Id.*

Quality Car seeks summary judgment under section 523(a)(6) of the Bankruptcy Code and a concomitant conclusion that Mr. Adkins' debt to Quality Car in the amount of $90,743.90 is nondischargeable.

## II.

### A.  Governing Standard

Federal Rule of Civil Procedure 56, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, authorizes summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c), Fed. R. Bankr. P. 7056. The moving party bears the burden. *Emmett v. Johnson*, 532 F.2d 291, 297 (4th Cir. 2008) ("When a party has submitted sufficient evidence to support its request for summary judgment, *the burden shifts to the nonmoving party . . . .*")

8

(emphasis added); *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993). The Court "view[s] the evidence in the light most favorable to . . . the nonmoving party, and draw[s] all reasonable inferences in . . . [the nonmovant's] favor." *Design Res., Inc. v. Leather Indus. of Am.*, 789 F.3d 495, 500 (4th Cir. 2015). Once the moving party has made a prima facie showing of its right to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that there is a genuine issue of material fact which precludes summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Specifically, "To show that summary judgment should not be awarded, . . . [the nonmovant] 'must provide more than a scintilla of evidence – and not merely conclusory allegations or speculation – upon which a jury could properly find in its favor.'" *Verisign, Inc. v. XYZ.COM LLC*, No. 15-2526, --- F.3d ---, ---, 2017 WL 514206, at *3 (4th Cir. Feb. 8, 2017) (quoting *Design Res., Inc.,* 789 F.3d at 500).

B. Law and Analysis

1. Section 523(a)(6)

Quality Car seeks a nondischargeability determination under 11 U.S.C. § 523. A presumption exists that all debts owed by the debtor are dischargeable unless the party contending otherwise proves nondischargeability. 11 U.S.C. § 727(b). The purpose of this "fresh start" is to protect "honest but unfortunate" debtors. *Bosiger v. US Airways, Inc.*, 510 F.3d 442, 448 (4th Cir. 2007). Courts are admonished to narrowly construe exceptions to discharge against the creditor and in favor of the debtor. *Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 497 (4th Cir. 2008) (*quoting Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999)). The burden is on the creditor to prove the exception to discharge by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287–88 (1991)*; Kubota*, 524 F.3d at 497.

9

Section 523(a)(6) excepts from dischargeability debts incurred by "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (2012). Generally, § 523(a)(6) applies to torts, but conversion can sometimes fall under § 523(a)(6). *Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 928 (Bankr. N.D. Ga. 2010) (Hagenau, J.); (4 Alan N. Resnik & Henry J. Sommer, *Collier on Bankruptcy* ¶ 523.12 (16th ed. 2009)). Prior to the Supreme Court's decision in *Kawaauhau v. Geiger*, the act of conversion often triggered nondischargeability under section 523(a)(6) in the Fourth Circuit. *Ocean Equity Group, Inc. v. Wooten (In re Wooten)*, 423 B.R. 108, 131 (Bankr. E.D. Va. 2010). Following *Geiger*, courts focused on "whether the conversion was an intentional one or merely a reckless or negligent conversion of property," as *Geiger* required "actual intent" to cause injury, and not simply an intentional action that *happened* to cause an injury. *Id.* A finding of nondischargeability thus requires more than "negligent, grossly negligent, or reckless conduct." *Duncan v. Duncan (In re Duncan)*, 448 F.3d 725, 729 (4th Cir. 2006). Rather, a plaintiff must show that the conversion was both willful and malicious. *Lowery*, 440 B.R. at 928.

Any movant under section 523(a)(6) in this setting must thus demonstrate that three elements are present: "(1) the debtor caused an injury; (2) the debtor's action were willful; and (3) that the debtor's actions were malicious." *Ocean Equity Group, Inc. v. Wooten (In re Wooten)*, 423 B.R. 108, 128 (Bankr. E.D. Va. 2010) (quoting *E.L. Hamm & Assoc., Inc. v. Sparrow (In re Sparrow)*, 306 B.R. 812, 834 (Bankr. E.D. Va. 2003)). Importantly, there are decisions that specifically result in a denial of a discharge based on disposition of secured collateral. *American General Finance, Inc. v. Burnside (In re Burnside)*, 209 B.R. 867, 871 (Bankr. N.D. Ohio 1997).

A "willful" act requires deliberate or intentional misconduct, while a "malicious" act is one that is "wrongful and without just cause or excessive even in the absence of personal

hatred, spite, or ill will." *Geiger*, 523 U.S. at 61; *Nestorio v. Associates Commer. Corp. (In re Nestorio)*, 250 B.R. 50, 57 (D. Md. 2000) (*quoting St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1008 (4th Cir. 1985)); S. REP. NO. 95-989, at 79 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5865; H.R. REP. NO. 95-595, at 365 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6320.

In evaluating "willfulness," some courts use the 'objective[] substantial certainty test' or the 'subjective motive test.' *Craig v. Corbin*, No. GJH-15-2656, 2016 U.S. Dist. LEXIS 99822, *25 (D. Md. July 28, 2016) (citing *Parsons v. Parks (In re Parks)*, 91 Fed. Appx. 817, 819 (4th Cir. 2003)). According to that measure, "willfulness" is: "established by demonstrating that the debtor took action that caused, or was substantially certain to cause, the injury. The [subject c]ourt considers the debtor's 'subjective state of mind' and not whether a 'reasonable debtor' should have known that his act would adversely affect another's rights." *Id.* (citing *Desert Palace Inc. v. Rich*, No. GJH-15-0091, 2015 U.S. Dist. LEXIS 132580, *10 (D. Md. Sept. 30, 2015). As recently as 2003 our court of appeals held that the test under section 523(a)(6) for "willfulness" is "whether the debtor acted with substantial certainty [that] harm [would result] or [that there was] a subjective motive to cause harm." *Parsons v. Parks (In re Parks)*, 91 Fed. Appx. 817, 819 (4th Cir. 2003) (quoting *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998)) (internal quotation marks omitted).

"Malice" may also be defined as "causing injury without just cause or excuse," *Id.; Craig*, 2016 U.S. Dist. LEXIS 99822 at *25 (citing *Desert Palace*, 2015 U.S. Dist. LEXIS 132580 at *16) or as being done "deliberately, intentionally, and with knowing disregard for [the] plaintiff's rights." *Reed v. Owens (In re Owens)*, 449 B.R. 239, 255 (Bankr. E.D. Va. 2011) (quoting *Johnson v. Davis (In re Davis)*, 262 B.R. 663, 670-71 (Bankr. E.D. Va. 2001)) (internal

quotation marks omitted). Some courts have held that, in cases involving conversion of property, "malicious intent must be demonstrated by evidence that the debtor had knowledge of the creditor's rights and that, with that knowledge, proceeded to take action in violation of those rights." *Wooten*, 423 B.R. at 134 (quoting *In re Nelson*, 67 B.R. 491, 497 (Bankr. D. Minn. 1985)) (internal quotation marks omitted). That "knowledge" can be "inferred from the debtor's experience in the business, his concealment of the sale, or by his admission that he has read and understood the security agreement." *Id.* No specific "ill will" or "specific intent" against the creditor need be shown to prove malice. *Wooten*, 423 B.R. at 130 (citing *First Nat'l Bank v. Stanley (In re Stanley)*, 66 F.3d 664, 667 (4th Cir. 1995)).

### 2. Analysis

Consistent with the three-element inquiry, the Court must first determine whether Mr. Adkins has caused injury to Quality Car. Quality Car loaned money to Mr. Adkins. Mr. Adkins used that money to purchase farm equipment and personal property which became collateral for the loans. Mr. Adkins defaulted on the loans. More than thirty (30) pieces of the collateral are missing, and Quality Car has not been reimbursed for its collateral, nor has it been made whole with insurance or sale proceeds. In fact, some of the collateral was sold without Quality Car's knowledge, and funds were diverted from Quality Car to either Mr. Adkins or his son. It is difficult to conjure a more apparent injury.

Next, applying the "objectively substantial certainty" and "subjective motive" tests, the question is whether Mr. Adkins acted willfully. At varying points, Mr. Adkins sold Quality Car's collateral without its knowledge or permission and failed to remit all of the sale proceeds to Quality Car. He has remarkably also somehow "lost track" of thirty-two pieces of equipment.

Regardless of whether he sold them, hid them, lost them, or left them susceptible to theft or destruction, Mr. Adkins has failed to surrender to Quality Car either its rightful collateral or the replacement sale or insurance proceeds. In selling Quality Car's collateral without its knowledge at auction and in random sales, Mr. Adkins demonstrably acted with substantial certainty that he was causing harm to Quality Car. In that specific instance where the Adkins used $17,000 in proceeds to purchase another vehicle at auction, Mr. Adkins sold Quality Car's collateral and immediately purchased another vehicle with the proceeds, which was then sold to a bona fide purchaser after Mr. Adkins obtained a loan with the vehicle as collateral. As an individual who has signed and renegotiated and refinanced loan documents, Mr. Adkins plainly knew that the equipment was collateral for Quality Car and that he was depriving his creditor of its collateral.

Similarly, with regard to the "missing" equipment, Mr. Adkins bore responsibity for securing and protecting it. He claims, however, that some of the collateral was stolen, "burned up," was never received, or is currently in an unknown location. His inability or unwillingness to serve as a trusted custodian of the collateral ripened into a substantial certainty on his part that some harm – for example, theft or destruction – would result.

Mr. Adkins has also not proven reliable. Based upon the absence of objective proof, he has left the Court with the impression that his medical diagnoses are misstated, going so far as to claim an illness and treatment for which there is no substantiation. The Court also noted Mr. Adkins' apparent difficulty walking when he has appeared for hearings, while there are objective medical records showing Mr. Adkins' with a normal gait and stance, along with normal movement of his extremities. These troublesome contradictions, coupled with the illicit nature of the sales of Quality Car's collateral and Mr. Adkins' refusal to provide discovery responses in both this case and the prior state court action, result in the ineluctable conclusion that obfuscation is afoot. Mr.

Adkins has, at a minimum, failed to protect and Quality Car's collateral and has most likely participated in the active concealment or conversion of the same. As a matter of law, Mr. Adkins acted willfully.

The final element of section 534(a)(6) is the requirement that Mr. Adkins acted maliciously. The question is whether Mr. Adkins acted deliberately, intentionally, and with knowing disregard for Quality Car's rights. In addition to the foregoing discussion, Mr. Adkins, in 2009, entered into *several* financing arrangements with Quality Car. He then *refinanced* those agreements after defaulting on them the first time. Both defaults occurred just after the financing agreements were settled. Mr. Adkins has been involved in farming, agricultural sales (both supplies and equipment), and the sale and rental of both agricultural equipment and commercial vehicles. He is versed in sale and rental contracts. Mr. Adkins has never claimed that he misunderstood the loan documents or that he did not understand Quality Car's interests in the collateral.

If Mr. Adkins sold the collateral, he knew that the proceeds should go to Quality Car. If Mr. Adkins had lost the collateral or had it stolen or had it "burned up," he knew that the insurance proceeds should go to Quality Car. If Mr. Adkins defaulted on the loan from Quality Car, he knew that the collateral needed to be repossessed by Quality Car. Despite that understanding and knowledge of the agreement between Mr. Adkins and Quality Car, he did not provide all of the collateral to Quality Car upon default, did not remit any insurance proceeds for the loss of the collateral, and, of greatest concern, sold some of the equipment on his own without obtaining permission from the lender and without remitting the sale proceeds to Quality Car. The sales in which Mr. Adkins partook were concealed. Quality Car was obliged to perform its own

investigation, contacting the auctioneers and auction houses directly to obtain information. These are, as a matter of law, malicious actions within the parameters of section 523(a)(6).

### 3. Damages

In cases of this magnitude, some courts treat the entire outstanding balance of the lender's claim as nondischargeable, with others limiting the nondischargeability to the amount of damage caused. *See Wooten*, 423 B.R. at 135-36. The former approach applies here. The declaration of nondischargeability should be commensurate with the injury caused -- the "fair market value of the collateral at the time of the conversion is the appropriate award of nondischargeable damages." *Id*. at 136 (quoting *Oakwood Acceptance Corp. v. Coltrane (In re Coltrane)*, 273 B.R. 478, 480 (D.S.C. 2001)).

Quality Car asserts that the harm caused by Mr. Adkins' amounts to $90,743. That number represents the value of the missing collateral at the time of purchase (around $80,000) plus the $10,000 diverted from Quality Car following the Joe Pyle Auction. Inasmuch as the collateral is missing or otherwise unaccounted for, appraisals cannot be performed, and no sale prices have been reported. Mr. Adkins admitted to the values of the collateral at the time of sale in late 2008/early 2009. The collateral was determined missing or concealed at some point, also, in 2009. This leaves one with the only reasonable conclusion that the value of the collateral did not decrease substantially between purchase and concealment. The sum of $90,743 represents the damage to Quality Car.

## III.

This Court finds that the three elements of section 523(a)(6) are satisfied. As a matter of law, there is no genuine issue of material fact that Mr. Adkins caused an injury to Quality Car and, in doing so, acted both willfully and maliciously. Mr. Adkins has offered not so much as a scintilla of evidence to the contrary.

**IT IS ORDERED** that Quality Car and Truck Leasing, Inc.'s Motion for Partial Summary Judgment Relating to Defendant's Entitlement to the Dischargeability of His Debt to Plaintiff Under § 523(a)(6) be, and is hereby, **GRANTED.**

**IT IS FURTHER ORDERED** that Mr. Adkins' debt to Quality Car and Truck leasing, Inc., in the amount of $90,743 be, and is hereby, **NONDISCHARGEABLE.**

**IT IS FURTHER ORDERED**, based on the foregoing, that Quality Car and Truck Leasing, Inc.'s Motion for Partial Summary Judgment Relating to Defendant's Entitlement to a Discharge Under § 727(a)(2) be, and is hereby, **DENIED WITHOUT PREJUDICE AS MOOT,** with Quality Car directed to submit a proposed judgment order for entry on or before February 27, 2016 or, instead, advise the Court whether any additional issues remain for adjudication prior to the entry of that proposed judgment order. Pending receipt of that information, trial is continued generally pending the further order of the court.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and Mr. Adkins, via certified mail, return receipt requested.